**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Raymond FEEMSTER,
Defendant-Appellant.**

No. 43400.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 12, 1982.

Stephen C. Banton, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

GUNN, Judge.

Defendant was convicted of three counts of assault in the first degree. His appeal raises the following points of alleged trial court error: (1) admission of certain photographs and physical evidence alleged to be irrelevant; (2) allowing a state's witness to state that possession of a sawed-off shotgun was contrary to federal law; (3) admission of a search warrant referring to an address of a residence different from that searched; (4) failing to declare a mistrial on prosecutorial comment that defendant engaged in a plan to sell marijuana; (5) refusing to order the state to produce all photographs taken of the crime scene; (6) failing to declare a mistrial after a police officer's comment that the search warrant had been issued for narcotics and stolen property. We affirm.

Armed with a search warrant and prominently displaying official badges and accoutrements of authority, St. Louis police officers went to a basement residence at 4453 St. Ferdinand to search for marijuana. Three of the police positioned themselves at the front door to the apartment, knocked and shouted their presence with a search warrant. The door swung open, and defendant and his brother greeted the police with blasts of gun fire from a pistol and a sawed-off shotgun, wounding one of the officers. An exchange of gun fire occurred with defendant and his brother ultimately being driven from the premises and captured through the use of tear gas, which started a fire. A search of the apartment netted the pistol which defendant had fired at police and his brother's sawed-off shotgun which had similarly been discharged with malevolent intent. Numerous photographs were taken of the outside and inside of the residence and of the contents found. The photographs were introduced as exhibits and received in evidence.

Defendant was charged and convicted of three counts of first degree assault by rea-

son of the attack on the three police officers.

Defendant's first point charges trial court error in admitting into evidence some spent shotgun shells found at the crime scene and photographs taken of the shells, a knife, a double barrel shotgun, a scale and a briefcase with envelopes used to package marijuana. The contention is that this evidence was immaterial and inflammatory.

■ A basic precept for refusing this point is that the trial court is vested with broad discretion in determining the relevancy of photographs and demonstrative evidence. *State v. Wood*, 596 S.W.2d 394, 402 (Mo.banc), *cert. denied*, 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980); *State v. Murphy*, 610 S.W.2d 382, 386 (Mo.App.1980); *State v. Johnson*, 539 S.W.2d 493, 515 (Mo. App.1976), *cert. denied*, 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977). And the state is not required to try its case in a vacuum but may show and develop the circumstances of the crime and integral parts thereof. *State v. Johnson*, 603 S.W.2d 683, 685–86 (Mo.App.1980); *State v. Powell*, 595 S.W.2d 13 (Mo.App.1979). In this instance, police with a properly issued search warrant went to defendant's residence to seize marijuana. They engaged in a gun battle with defendant and his brother, in which shotgun blasts were exchanged. The photographs and spent shotgun shells were introduced to depict the circumstances surrounding the crime and the conditions existing after the shootout. Thus, they were relevant to aid the jury on a material issue in determining the circumstances of the crime. *State v. Hurst*, 612 S.W.2d 846, 854 (Mo. App.1981); *State v. Cole*, 588 S.W.2d 94, 98 (Mo.App.1979). *See State v. Johnson*, 539 S.W.2d at 515–17 (weapons, cartridge belt and other items taken at the scene of defendant's arrest held relevant to corroborate the state's case of malice and of the circumstances existing). There was no abuse of trial court discretion in admitting the evidence about which defendant complains, as the photographs serve pictorially to clarify testimony of the various witnesses. *State v. Ward*, 622 S.W.2d 354, 356 (Mo.App.1981).

As part of his case, defendant's counsel called on a firearms expert to testify, *inter alia*, whether any of the spent shells found by police had been fired from the sawed-off shotgun admitted in evidence. On cross-examination of the expert, the prosecutor inquired as to the legality of owning or possessing a sawed-off shotgun. Over defendant's objection the expert was permitted to state that in his opinion it was a violation of federal law to own or possess such a weapon. On appeal defendant contends that the opinion given was an improper legal conclusion and outside the scope of cross-examination.

■ The extent of scope of cross-examination is a matter resting within the substantial discretion of the trial court. *State v. Lue*, 598 S.W.2d 133, 138 (Mo.banc 1980). There was no abuse of discretion in permitting defendant's firearms expert to express his opinion as to the legality of owning and possessing a sawed-off shotgun, for this matter had been brought before the jury previously without objection during cross-examination of defendant.[1] As defendant points out, an expert may state conclusions of fact, vis-a-vis, conclusions of law. *State v. Maxie*, 513 S.W.2d 338, 344 (Mo.1974), *cert. denied*, 420 U.S. 930, 95 S.Ct. 1132, 43 L.Ed.2d 402 (1975). But defendant was not prejudiced in this instance by the statement of his own expert, as the jury was already aware of the illegality of the sawed-off

1.   Q [Prosecutor] You do know it's illegal to own a sawed-off shotgun?
  A [Defendant] Yes.
  Q You cannot register a sawed-off shotgun?
  A Yes, sir.
  Q Were there any other sawed-off shotguns in the house?
  A No, sir.

  Q Were there any other barrels from other sawed-off shotguns in the house?
  A Yes, sir.
  Q How did that barrel get there?
  A I don't know. I think it was there when we moved in the house.
  Q For five or six years?
  A Yes, sir.

shotgun and its use by his brother through defendant's testimony.

The address on the search warrant was 4451 St. Ferdinand. The police raid occurred at 4453 St. Ferdinand. Defendant contends that this technical discrepancy vitiated the warrant, and it should not have been admitted into evidence.

Police making the raid knew precisely the residence in which defendant lived and where they intended to conduct their search, because an informant had shown it to them in advance. They were not confused or misled by the technically incorrect address and knew they could identify their destination with particularity. Thus, the officers who sought and obtained a search warrant were fully aware of defendant's residence from prior knowledge and surveillance. The warrant also described the building, its door and the location of the residence in specific detail. Thus, it was not happenstance that police were at defendant's doorstep when he commenced his assault upon them. There are, therefore, two bases for finding no error in admitting the search warrant into evidence.

█ First, the evidence of the warrant with its defective address was before the jury without complaint. And while the warrant did contain an error as to the address, its receipt in evidence was only a depiction of the circumstances fully disclosed to the jury of the entire episode leading to defendant's arrest. Through the informant, police had a right to be at the door to defendant's apartment. Once defendant fired upon them, they had a right to enter the premises and seize the items in view. *State v. Brandon*, 606 S.W.2d 784, 788 (Mo.App.1980). The legitimacy of the search warrant has no bearing on these circumstances.

█ Second, this particular search warrant was not invalid. Defendant relies on *State v. Buchanan*, 432 S.W.2d 342 (Mo. 1968), in which police conducted a search of

certain premises and seized items pursuant to a search warrant with an incorrect address which was subsequently altered. The Missouri Supreme Court held that the search and seizure under those circumstances was error.[2] But *Buchanan* is readily distinguishable, as there was no other apparent description of the premises other than the wrong address, and police had no previous knowledge of the premises from an informant or prior surveillance. The items seized in *Buchanan* were held to be the product of an unlawful search, but that is not the circumstance in this case.

The officers in this proceeding could clearly identify the property to be searched "in sufficient detail and particularity that the officer[s] executing the warrant" could readily ascertain it and thus comport with § 542.276.6(4), RSMo 1978 pertaining to search warrants.

The facts of this case parallel those in *United States v. Gitcho*, 601 F.2d 369 (8th Cir.), *cert. denied*, 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979), upholding a search warrant for 4144 Geraldine in St. Louis County, whereas the address of the premises to be searched was 4146 Geraldine. In *Gitcho*, as in this case, police had the property at the 4146 address under surveillance and the premises intended to be searched were those actually searched. In *Gitcho* the 8th Circuit found the search warrant valid despite the fact that it was technically incorrect as it "was reasonable for the location intended," and the evil of search of a mistaken premises was not reasonably probable. *Id.* at 371–72.

Such were the circumstances of this case, and no error occurred in the admission of the search warrant.

█ During closing argument, the prosecutor made reference to the fact that certain manila envelopes found in the apartment were used for packaging marijuana to be sold. Defendant's counsel objected to the comment and asked for a mistrial on

---

2. In *Buchanan*, the search warrant described the premises as 310 N. Hocker, whereas the

seizure of evidence was at 314 N. Hocker.

the basis of reference to another crime. The trial court responded by sustaining the objection and striking reference to the selling of marijuana. Defendant contends prejudice. But the evidence of marijuana had been placed before the jury by both the state and defendant. Further, the trial court is vested with substantial discretion in controlling argument of counsel. *State v. Murphy*, 592 S.W.2d 727, 732 (Mo.banc 1979). There was no abuse of discretion in the action the trial court took and in refusing to declare the drastic remedy of mistrial. *State v. Harris*, 622 S.W.2d 330, 336–37 (Mo.App.1981).

 Defendant next contends that he was not supplied all the photographic exhibits. The state's photographer testified that he took "approximately" or "close to fifty-five" photographs. Defendant's counsel stated that he had received only fifty-two photos. The photographer responded that some may have been duplicates or not turned out. The prosecutor stated that all photographs had been produced for defendant, but defendant's counsel moved that he be supplied with a negative of photos to establish that three were missing. The trial court denied the motion. We cannot find any error with that ruling, for under the evidence there is no reason to believe that there are three photos in existence which defendant did not receive. Anyhow, it is inconceivable that three more photos of the front room, which defendant suggests are missing, would clear him of his guilt, as he admitted shooting at the police.

Defendant's final point relates to an unsolicited comment by a police officer. The prosecutor asked the officer if he knew the purpose of the search warrant. The response was: "Narcotics and stolen property." Inasmuch as the warrant was only for marijuana, defendant contends the remark as to stolen property injected a new crime into the case. The prosecutor assured the trial court that the comment was unsolicited, and the unresponsive nature of the statement is apparent. The trial court promptly gave a cautionary instruction to disregard the comment, though denying a mistrial. There was no further reference to the statement. Evidence of defendant's guilt was overwhelming; the trial court took prompt action to overcome the unresponsive statement. Therefore, there was no abuse of discretion in refusing to declare a mistrial. *State v. Harris*, 622 S.W.2d at 335–36; *State v. Ivory*, 609 S.W.2d 217, 222 (Mo.App.1980); *State v. Warden*, 591 S.W.2d 170, 172 (Mo.App.1979).

Judgment affirmed.

DOWD, P. J., and SIMON, J., concur.