**UNITED STATES of America,**
**Plaintiff,**

v.

**Ashley ROBINSON, Defendant.**

**No. CR 04–32–BU–DWM.**

United States District Court,
D. Montana,
Butte Division.

Feb. 28, 2005.

Josh Van de Wetering, Missoula, MT, for The United States.

Timothy Bechtold, Missoula, MT, for Defendant.

## ORDER

### I. Introduction

This case involves a question about the scope of a search warrant. The police had probable cause to believe that Defendant Ashley Robinson was a methamphetamine dealer, and that evidence of her involvement in the drug trade would be found in her pick-up truck and her house. Armed with more than adequate probable cause to obtain a search warrant for either place, the police drafted an application for a search warrant and presented it to a state judge in Butte, Montana. The application for the warrant described Robinson's house in detail as well as her truck. Nonetheless, the operative language of the application sought a warrant "to enter such *vehicle* more particularly described above and search for evidence of crimes ..." (Emphasis added.) The judge who issued the search warrant authorized only a search of "the *vehicle,* more particularly described above" for evidence of the crimes alleged. (Emphasis added.) The motion to suppress argues that when the police searched the house they exceeded the scope of the warrant that allowed only a search of the truck. The government argues that the search of the house was intended to be a part of the application and warrant even though that it at odds with the face of both, a discrepancy the government attributes to a "cut and paste" error. The Fourth Amendment's warrant requirement has no exception for a mistake in cutting and pasting, nor does it authorize a reviewing court to divine what seems obvious but is clearly outside the scope of the application and warrant authorizing the search. For the reasons set forth below, the motion to suppress is granted.

### II. Factual Background

The facts of this case are undisputed. Following a tip from an alleged customer of Robinson's, the Butte police prepared an application for a warrant to search her home and residence for evidence of methamphetamine distribution. The application describes with particularity the Defendant's residence and vehicle, and sets forth several pages of facts to support a finding of probable cause. It goes on to assert that the affiant believes probable cause exists that evidence of drug trafficking crimes will be found "within the residence and vehicle described above." In requesting the warrant, however, the affiant asks

only that the police be authorized to search the Defendant's vehicle.[1]

The warrant itself describes the Defendant's home as the place in which the affiant expects contraband will be found. The second paragraph of the warrant reflects the signing judge's finding that evidence of drug trafficking crimes exists "in the residence and vehicle more particularly described above." However, the operative portion of the warrant, that which commands the search, does not include a reference to the residence, but instead authorizes a search of only the truck.[2]

The Butte police arrived at Robinson's residence to execute the warrant just as Robinson was leaving the residence in the truck. Some police officers stopped the truck while others entered the residence and began a search. In Robinson's pockets, officers found a bag containing 19.1 grams of methamphetamine, a bag containing .28 grams of methamphetamine, and a bag containing .43 grams of marijuana. Officers brought Robinson back to the residence, a search of which yielded

$10,000.00 in cash, 165.6 grams of methamphetamine, 14.7 grams of marijuana, and an unloaded .357 Sturm Ruger handgun.

Robinson is charged in a two-count Indictment with Possession of More Than 50 Grams of Methamphetamine with Intent to Distribute and Possession of a Firearm During and in Relation to a Drug Trafficking Offense.

## III. Analysis

The sole question before the Court is whether the failure to include the residence in the command line of the search warrant renders the search of the residence by Butte police invalid.

Defendant Robinson argues that the evidence obtained during the search of the residence should be suppressed because (1) the search exceeds the scope of the warrant; and (2) no exception to the warrant requirement applies.

The government argues for the applicability of the good faith exception to the warrant requirement because the Butte police believed they were executing a valid

---

1. The operative language of the warrant application reads,

> I therefore request a Search Warrant be issued permitting myself or my agents to enter such vehicle more particularly described above and search for evidence of the crimes of CRIMINAL DISTRIBUTION OF DANGEROUS DRUGS; CRIMINAL POSSESSION OF DANGEROUS DRUGS, a felony, and/or CRIMINAL POSSESSION OF DRUG PARAPHERNALIA, a misdemeanor, in violation of Section 45–10–103, MCA, 2001 including but not limited to dangerous drugs including methamphetamine; drug paraphernalia, including scales, packaging materials, documents; currency, safe(s), weapons, cell phones, Honda generator and any other evidence connected to the crimes of CRIMINAL DISTRIBUTION OF DANGEROUS DRUGS, CRIMINAL POSSESSION OF DANGEROUS DRUGS and CRIMINAL POSSESSION OF DRUG PARAPHERNALIA as described above.

Warrant Application at 4–5.

2. The operative language of the warrant itself reads,

> Wherefore, You are Hereby Commanded to serve this warrant in accordance with Section 46–5–227, MCA, and search the vehicle, more particularly described above for evidence of the offenses of CRIMINAL DISTRIBUTION OF DANGEROUS DRUGS, CRIMINAL POSSESSION OF DANGEROUS DRUGS, and CRIMINAL POSSESSION OF DRUG PARAPHERNALIA, including but not limited to dangerous drugs including methamphetamine; drug paraphernalia, including scales, packaging materials, documents; currency, safe(s), weapons, cell phones, Honda generator and any other evidence connected to the crimes of CRIMINAL DISTRIBUTION OF DANGEROUS DRUGS, CRIMINAL POSSESSION OF DANGEROUS DRUGS and CRIMINAL POSSESSION OF DRUG PARAPHERNALIA as described above.

Search Warrant at 2.

warrant. The government also maintains that the omission of the residence in the command line is a minor "cut and paste" error that does not require suppression of the evidence seized in the residence.

The Fourth Amendment requires that a search conducted pursuant to a warrant not exceed the strict bounds of the warrant. *Bivens v. Six Unknown Agents,* 403 U.S. 388, 394 n. 7, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Whether a search exceeds the scope of a search warrant must be determined through an objective assessment of the circumstances surrounding the issuance of the warrant, the contents of the search warrant, and the circumstances of the search. *United States v. Hitchcock,* 286 F.3d 1064, 1071 (9th Cir.2002). In deciding whether a search exceeded its lawful scope, a court may consider both the purpose disclosed in the warrant application and the manner of the warrant's execution. *Id.* (quoting *United States v. Rettig,* 589 F.2d 418, 423 (9th Cir.1978)). The subjective state of mind of the officer executing the warrant is not relevant to the inquiry. *Id.*

The government argues that the search did not exceed the scope of the warrant because the omission of the residence from the command section cannot defeat the approving judge's intention to include the residence. Despite the omission of the residence from the command line, the prosecution argues that the intent of the judge is clear from the rest of the warrant, including the description of the residence and the explicit finding of probable cause to search the residence. Where the intent of the judge issuing the warrant is clear, the government argues, minor imperfections will not affect the warrant's validity.

In support of its position, the government cites the following quote from *United States v. Cannon:*

> Despite the Constitution's particularity requirement suggesting close construc-

tion of the language of a warrant authorizing a search, the Supreme Court has explained that affidavits for search warrants ... must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

264 F.3d 875, 878–79 (9th Cir.2001) (citations, quotation marks omitted). The prosecution contends that a reading of the warrant issued in this case that excludes the residence from the places' to be searched is the sort of "grudging or negative" reading discouraged by *Cannon.*

*Cannon* is a case in which DEA agents obtained a warrant to search a residence. The residence was one of two structures on the property, the other appearing to be a detached garage. The garage was omitted from the warrant application because the affiant believed it to be included as part of the residence. In fact, the garage had been converted to a rental apartment occupied by someone other than the suspect. The suspect/landlord had retained the use of two storage rooms in the garage that were not accessible to the tenant. A search of the storage rooms yielded marijuana. The Ninth Circuit reversed the district court's ruling suppressing the marijuana, finding that the warrant to search the main residence authorized a search of the storage rooms because the storage rooms were within the curtilage of the residence and within the control of the suspect. *Cannon,* 264 F.3d at 879–80.

The facts of the *Cannon* case provide little analytical guidance here, where the issue is not whether the search was properly confined to the residence or its curtilage but whether the search was authorized at all. The quote cited by the

government is particularly unhelpful to its case because the portion of the quote requiring realistic and commonsense interpretation deals with the affidavit and application, not the warrant itself. The portion of the quote addressing the warrant itself notes the Constitution's "particularity requirement suggesting close construction of the language of a warrant authorizing a search." Close construction of the language authorizing the search in this case reveals that a search of the residence is not authorized.

The government next cites *United States v. Mann*, 389 F.3d 869 (9th Cir. 2004), in which the Ninth Circuit upheld a search warrant that mistakenly described the place to be searched as Lower Deer Creek rather than Upper Deer Creek. The court found that the particularity requirement was met where the warrant described the place to be searched as the "campground up Cherry Creek Road on the West Fork of the Lower Deer Creek, T2S, R14E, NW 1/4 of Section 21, Sweet Grass County, Montana, occupied by James Francis Pollander." 389 F.3d at 872. The court noted that the agents knew which campsite was to be searched and the "technically misstated address" could not have caused confusion because Cherry Creek Road is the sole road in Section 21 and it leads only to Upper Deer Creek. *Id.* at 877.

█ The government cites *Mann* for its statement of the test for particularity in describing the place to be searched. The test requires a court to consider (1) whether the warrant describes the place to be searched with sufficient particularity to enable law enforcement officers to locate and identify the premises with reasonable effort; and (2) whether any reasonable probability exists that the officers may mistakenly search another premise. *United States v. Mann*, 389 F.3d 869, 876 (9th

Cir.2004)(quoting *United States v. Turner*, 770 F.2d 1508, 1510 (9th Cir.1985)).

It is clear how the Ninth Circuit, employing the standard set forth in *Mann*, determined that the warrant issued in that case was sufficient. It is not clear what application *Mann* has to this case, where the issue is not whether the warrant describes Defendant Robinson's residence with particularity, but whether the warrant authorizes a search of the residence at all. There is no dispute that the warrant adequately describes the residence. It is also undisputed that the warrant contains a finding of probable cause to search the residence. The only question for the Court is whether the search exceeded the scope of the warrant, i.e., whether the warrant authorized a search of the residence.

█ To determine the scope of the warrant issued in this case, the Court must, in accordance with *Hitchcock*, conduct an objective assessment of the circumstances surrounding the issuance of the warrant, the contents of the search warrant, and the circumstances of the search. 286 F.3d at 1071.

The circumstances surrounding the issuance of the warrant include a suspect's admission that he had gone to Robinson's house and traded a Honda generator for two grams of methamphetamine, which Robinson weighed out in her living room, as well as a detailed description of the residence in the warrant application. The warrant itself contained a detailed description of the residence and an explicit finding of probable cause to search the residence. These factors suggest that the approving judge meant to include the residence when authorizing a search relating to Defendant Robinson. However, another factor to be considered when examining the contents of the warrant is the fact that the warrant

omits the residence from the command section.

◼ While an objective assessment seems to indicate that the judge issuing the warrant would have approved a search of the residence, the fact is that the judge did not do so. Given the Constitution's requirement that law enforcement officers executing a search warrant remain within the strict bounds of the warrant, the Court must refrain from relying on the approving judge's apparent intent to expand the scope of the warrant. The government is correct that in certain instances mistakes in warrants can be overlooked by a reviewing Court. Such cases typically involve minor errors in the description of the place to be searched or the items to be seized. In those cases, there is no doubt about the intent of the judge issuing the warrant. In this case, in which there is not a mistaken description but a complete omission, some doubt remains as to the intent of the issuing judge. There is no authority empowering a reviewing court to find through divination that the issuing judge meant to authorize the search of a residence where the warrant on its face fails to authorize such a search. The failure to command a search of the residence was almost certainly a mistake, but not one for this Court to correct. The prosecution would have the Court take the view that the Fourth Amendment is not such a stickler as to demand that a search be explicitly authorized by a warrant. Where fundamental rights are at stake, however, the Court is not inclined to impute to the Constitution such lenience.

◼ Because the search of the residence exceeded the scope of the warrant, the evidence must be suppressed in accordance with the exclusionary rule unless an exception to the warrant requirement applies. *See United States v. Leon,* 468 U.S. 897, 908, 104 S.Ct. 3405, 82 L.Ed.2d 677

(1984). The United States argues for the applicability of the good faith exception.

◼ The good faith exception provides that "where an officer's conduct is objectively reasonable," that is, "the officer [acted] as a reasonable officer would act in similar circumstances," evidence recovered during a warrantless search will not be suppressed. *Leon,* 468 U.S. at 919–20, 104 S.Ct. 3405. There is some question as to whether it is reasonable for officers to search a residence while executing a warrant that does not expressly authorize such a search. It is unnecessary to resolve that question, however, as the good faith exception has no application in this case. As the Court explained in *Hitchcock,*

> [t]he good faith exception has no application here, where there is no dispute about the search warrant's validity but only about whether the agents executed the warrant before it was effective. Rather, the issue is whether the search was conducted within the scope of a warrant, though here the issue is temporal scope whereas in the ordinary case what is at issue are the items for which the search warrant was issued or the places the warrant authorizes to be searched.

286 F.3d at 1071. Likewise, there is no dispute here about the warrant's validity. The only issue is whether the search was conducted within the scope of the warrant as it pertains to the places the warrant authorizes to be searched.

### IV. Order

The warrant issued in this case authorized the search of a pick-up. It failed to expressly authorize a search of Defendant Robinson's residence. There is no authority for a reviewing court to assume that a judge who issued a warrant to search a pick-up meant to authorize the search of a residence.

The Court having found that the search of Defendant Robinson's residence exceed the scope of the search warrant, and that no exception to the warrant requirement applies,

IT IS HEREBY ORDERED that the Defendant's motion to suppress (dkt # 10) is GRANTED. In accordance with the exclusionary rule, all evidence seized as a result of the search of Defendant Robinson's residence will be suppressed at trial.